UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

ROBELY ROBLERO-VASQUEZ,
Petitioner,
v.
MARKWAYNE MULLIN, et al.,
Respondents.

Case No. 5:26-cv-05487-KES

ORDER GRANTING THE FIRST AMENDED PETITION IN PART AND ORDERING PETITIONER'S RELEASE FROM CUSTODY

## I. INTRODUCTION

Robely Roblero-Vasquez ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging Petitioner's detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 13.)

The Court dismissed the initial Petition with leave to amend. (Dkt. 11.) Petitioner then filed a First Amended Petition ("FAP" at Dkt. 14). Respondents answered the FAP ("Answer" at Dkt. 16), and Petitioner replied ("Reply" at Dkt. 17).

The FAP is granted in part and Respondents are directed to immediately release Petitioner from custody. The vehicle stop that led to Petitioner's arrest did not comply with the Fourth Amendment or federal regulations, and Respondents have not provided competent evidence that Petitioner was arrested pursuant to a valid administrative arrest warrant. However, the FAP is denied insofar as Petitioner is arguing that due process required a pre-deprivation bond hearing before his arrest.

## II. FACTUAL AND PROCEDURAL HISTORY

### A. Entry and Life in the U.S. (2016-2026).

Petitioner is a native and citizen of Mexico who entered the U.S. without inspection more than ten years ago. (FAP at 14, ¶ 52; Dkt. 9-1 (DHS Form I-213).) "He has established residence in Simi Valley, California, maintains employment, and has developed significant religious and community relationships." (FAP At 14, ¶ 53.) He "is an active member of his church community and has a longstanding relationship with a United States citizen." (FAP at 14, ¶ 54.) He has no criminal history. (FAP at 14, ¶¶ 56-59; see also Dkt. 9-1 at 3 (DHS Form I-213, stating, "CRIMINAL HISTORY: None").)

### B. Detention by ICE (Sept. 16, 2026).

The only facts in the record about Petitioner's arrest and detention are contained in the Form I-213, Record of Deportable/Inadmissible Alien, which is attached to Respondents' Answer to the initial Petition. (Dkt. 9-1.) That form states as follows.

On September 16, 2026, ICE officers "conducted a targeted field operation" at a residential address in Simi Valley, California, attempting to apprehend Diblain Roblero-Vazquez, i.e., not Petitioner Robely Roblero-Vasquez. (Id. at 3.) It is unclear whether the target address was Petitioner's home address, because Respondents have redacted Petitioner's address from the I-213. (Id. at 2.) Although the target and Petitioner share similar last names, Respondents have not

explained whether they believe the two persons are related.

"At approximately 0538 hours," the officers "observed a male fitting the description of" the target—later identified as Petitioner—"enter the driver's side of a white pickup truck" and begin driving. (Id. at 3.) The Form I-213 does not state whether Petitioner exited the target residence or was simply in the same general neighborhood.

The officers "initiated their emergency lights and conducted a vehicle stop…." (Id. at 3.) The officers "identified themselves and identified the driver as [Petitioner]…." (Id. at 3.) The officers "asked [Petitioner] if he had any documentation that would allow him to be legally present in the United States, [to] which he responded, 'No.'" (Id. at 3.)

"Based on system queries and voluntary statements made by [Petitioner], a[n] [administrative] warrant of arrest ([Form] I-200) was obtained from the SDDO [Supervisory Detention and Deportation Officer] on the scene." (Id. at 3.) This apparently took less than four minutes, because "[a]t approximately 0542 hours [Petitioner] was placed under arrest and transported to" an ICE office in Los Angeles. (Id. at 3.)

The Form I-213 for Petitioner indicates that ICE officers "served the I-200 warrant of arrest when it was safe to do so," and that, sometime the same day, Petitioner was also served with a notice to appear form (I-862) ["NTA"]." (Id. at 3.) However, Respondents have not produced a copy of either the arrest warrant or the NTA.

Petitioner remains in ICE custody in Adelanto, California. See ICE Detainee Locator, https://locator.ice.gov/odls/ (A# 246-062-508 (Mexico), last accessed Nov. 19, 2026). His removal case remains pending; he currently has a master hearing set for December 2, 2026. See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (A# 246-062-508 (Mexico), last accessed Nov. 19, 2026).

### C. Habeas Proceedings.

On September 20, 2026, Petitioner filed the initial Petition in this case. (Dkt. 1.) The Petition alleged that, when ICE officers encountered Petitioner, he was standing "outside his own apartment … in the area immediately adjacent to and associated with his residence" (id. at 10, ¶¶ 51-52), and that no warrant, either administrative or judicial, was served on Petitioner (id. at 11, ¶ 55). Respondents answered on September 28, 2026 (Dkt. 9) and attached the DHS Form I-213, which stated that Petitioner was arrested not at his residence but during a vehicle stop (Dkt. 9-1). The DHS Form I-213 also stated that an administrative arrest warrant had been issued to authorize Petitioner's arrest. (Id.) Petitioner replied on September 29, 2026. (Dkt. 10).

On October 13, 2026, the Court dismissed the Petition with leave to amend, noting the factual discrepancies between the Petition and Answer, and that the Reply appeared "to bring materially different claims challenging the traffic stop, which [were] not pled in the Petition." (Dkt. 11 at 2.)

Petitioner timely filed the present FAP on October 18, 2026, raising following claims:

Ground 1: Respondents violated Petitioner's Fourth Amendment rights because the officers lacked "sufficiently specific, objectively reasonable facts" to support the September 16, 2026 traffic stop. (FAP at 30-32, ¶¶ 154-66; see also id. at 21, ¶ 102 (discussing Terry v. Ohio, 392 U.S. 1, 16-22 (1968)).) Petitioner argues that, although the Form I-213 "identifies the reason for the stop as a purported resemblance between the person observed and the intended target," it "does not identify the specific characteristics supporting that resemblance or otherwise establish the facts known before the stop that rendered the mistaken identification objectively reasonable." (Id. at 31, ¶¶ 158-59.) He argues that the Form I-213 also "identifies no traffic violation, attempted evasion, or independent immigration-related conduct attributable to Petitioner before officers activated

their emergency lights." (Id. at 13, ¶ 160.)

Ground 2: Respondents violated 8 C.F.R. § 287.8(b)(2) by stopping Petitioner "without adequate individualized suspicion" and "unlawful[ly] continu[ing] [the stop] after the mistaken identification was resolved." (FAP at 32-34, ¶¶ 167-77.)

Ground 3: Respondents violated 8 U.S.C. § 1226(a), 8 U.S.C. § 1357(a)(2), and 8 C.F.R. § 287.8(c)(2)(ii). (FAP at 34-36, ¶¶ 178-91.) Petitioner argues that it is "unresolved … whether the encounter had already become a custodial arrest before [the administrative arrest] warrant was issued," and he "requests that Respondents produce the complete I-200 [arrest warrant] and its issuance records and identify the precise point at which they contend formal arrest occurred." (Id. at 35, ¶¶ 184, 189.) He argues, "If the evidence establishes that arrest preceded warrant issuance, Petitioner alleges that the arrest violated §§ 1226(a) and 1357(a)(2) absent a contemporaneous individualized likelihood-of-escape determination." (Id. at 36, ¶ 190.)

Ground 4: Respondents violated Petitioner's Fifth Amendment procedural due process rights by arresting him without "reasonable individualized safeguards." (FAP at 36-38, ¶¶ 192-205.) He argues he "lived in the United States for more than a decade before his September 16 detention, maintaining a fixed residence, employment, community relationships, and personal commitments," which "form[ed] part of the private interest considered" under a due process analysis. (Id. at 36, ¶¶ 194-96.)

Ground 5: "Unlawful continuing custody and appropriate habeas relief where the government has not established an independent legal basis sufficient to sustain detention." (FAP at 38-40, ¶¶ 206-15.)

The FAP seeks Petitioner's immediate release from custody or, alternatively, a § 1226(a) bond hearing before an IJ. (FAP at 49-52.)

Respondents answered the FAP on October 21, 2026, asking the Court "to

treat their [Answer] filed on September 28, 2026 (Dkt. 9) as their [Answer] to Petitioner's [FAP]." (Answer at 2.) In the prior Answer, Respondents argued, "Respondents are opposed to the requested release because this is the first detention of an interior entrant," and Petitioner "was not previously released from immigration detention or paroled." (Dkt. 9 at 2-3.) They also argued his arrest was legal, reasoning as follows:

> … Petitioner – in respon[se] to inquiry from an ICE officer conducting a traffic stop – admitted that he does not have any documentation that would allow him to be legally present in the United States. As a result, an I-200 warrant of arrest was obtained and Petitioner was placed under arrest. A true and correct copy of the Form I-213, Record of Deportable/Inadmissible Alien reflecting same is attached hereto….
>
> Further he was served with a[n] [NTA], Form I-862, pursuant to Section 237(a)(1)(C) of the [INA]. See … 8 C.F.R. [§] 236.1(b)(1) ("[a]t the time of issuance of the [NTA], or at any time thereafter and up to the time removal proceedings are completed, the [noncitizen] may be arrested and taken into custody…").

(Dkt. 9 at 2.) However, after keeping Petitioner in custody for nearly two months with no bond hearing, they then conceded that Petitioner "appear[ed] to be entitled to request and receive an initial bond hearing pursuant to Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026)…." (Id.)

Petitioner replied on October 22, 2026. (Dkt. 17.) On November 3, 2026, he also moved to stay these habeas proceedings until after a scheduled bond hearing before an immigration judge ("IJ"). (Dkt. 18.) The Court granted the motion. (Dkt. 19.)

On November 4, 2026, Petitioner had the bond hearing, and the IJ denied release, finding that Petitioner is a flight risk. (Dkt. 20-1 (IJ's order).) The IJ's

written order does not explain the basis for that decision.

On November 11, 2026, Petitioner filed a status report attaching the IJ's decision and asking the Court lift the stay. (Dkt. 20.)

**III. DISCUSSION**

**A. Petitioner is Entitled to Relief on Grounds 1 and 2 Because ICE Officers Lacked Specific Articulable Reasons for Stopping His Vehicle, Which Means the Traffic Stop Violated the Fourth Amendment and Federal Regulations.**

**1. Legal Standard.**

"The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975). "In Brignoni-Ponce, the Supreme Court considered the Border Patrol's authority to stop automobiles in areas near the Mexican border." Vasquez Perdomo v. Noem, 148 F.4th 656, 682 (9th Cir. 2025). The Supreme Court held, "'[E]xcept at the border and its functional equivalents,' the Fourth Amendment does not allow immigration enforcement officers to make detentive stops unless they are 'aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion' that the persons stopped or detained 'may be illegally in the country.'" Id. (quoting Brignoni-Ponce, 422 U.S. at 884). The Ninth Circuit has described the reasonable suspicion standard as follows:

> Reasonable suspicion must be "particularized and objective." … That is, an officer must have reasonable suspicion as to "*the particular person being stopped*." … In making a reasonable-suspicion determination, "the facts must be filtered through the lens of the agents' training and experience," … "but 'experience' does not in itself serve as an independent factor in the reasonable suspicion analysis." … "In other words, an officer's experience may furnish the

> background against which the relevant facts are to be assessed," … but the officers' "rational inferences" and "permissible deductions" must "flow from objective facts and be capable of rational explanation." …
>
> To form reasonable suspicion, an officer must rely on facts and inferences specific enough that they do not describe "[l]arge numbers," … or a "broad profile" of individuals….. Reasonable suspicion cannot be based on "generalizations that, if accepted, would cast suspicion on large segments of the law-abiding population." … Rather, the specific facts articulated "must provide a rational basis for separating out the illegal aliens from American citizens and legal aliens." … Accordingly, "[a] characteristic common to both legal and illegal immigrants does little to arouse reasonable suspicion."

Vasquez Perdomo, 148 F.4th at 682-83 (citations omitted; emphasis in original) (agreeing with the district court that, "in the context of the Central District of California, the four enumerated factors at issue—apparent race or ethnicity, speaking Spanish or speaking English with an accent, particular location, and type of work, even when considered together—describe only a broad profile and 'do not demonstrate reasonable suspicion for any particular stop'")[1]; see also United Farm

---

[1] In this opinion, the Ninth Circuit denied the government's motion to stay the district court's temporary restraining order ("TRO") pending appeal, except as to a single clause of the TRO. Vasquez Perdomo, 148 F.4th at 664. The Supreme Court later stayed the TRO pending appeal. Noem v. Vasquez Perdomo, 146 S. Ct. 1 (2025). In a concurrence, Justice Kavanaugh opined that the government had "demonstrated a fair prospect of reversal of the District Court's injunction." Id. at 2 (Kavanaugh, J., concurring). The main opinion of the Court did not comment on the merits of the case. Id. at 1. The Ninth Circuit appeal was later dismissed as moot, after the TRO "was supplanted by a preliminary injunction." Perdomo v. Noem, No. 25-4312, 2025 WL 4053187 (9th Cir. Nov. 21, 2025). Despite this subsequent history, the Ninth Circuit's summary of the relevant Fourth

Workers v. Noem, 829 F. Supp. 3d 801, 831-34 (E.D. Cal. 2026) (summarizing the same standard); Cruz Uitz v. Noem, No. 25-cv-06420-MWF-AJR, 2025 WL 2995008, at *8, 2025 U.S. Dist. LEXIS 211772, at *21 (C.D. Cal. Sept. 23, 2025) ("Defendants knew nothing more at the time of Plaintiff's detention than Plaintiff's apparent race and the fact he was present at a car wash. … These facts do not amount to reasonable suspicion that Plaintiff was in the country illegally."); Mejia v. Warden, No. 26-cv-5705-E, 2026 WL 3019449, at *2 (C.D. Cal. Oct. 7, 2026) ("There is no showing on this record of any 'reasonable suspicion' for the ICE agents' initial detention and questioning of Petitioner. Therefore, the initial detention and questioning of Petitioner violated the federal regulation.").

The regulation Petitioner cites, 8 C.F.R. § 287.8, essentially codifies these standards. It provides, "If the immigration officer has a reasonable suspicion, based on specific articulable facts, that the person being questioned is, or is attempting to be, engaged in an offense against the United States or is an alien illegally in the United States, the immigration officer may briefly detain the person for questioning." 8 C.F.R. § 287.8(b)(2).

**2. Analysis.**

Respondents argue that Petitioner's arrest was legal because an administrative arrest warrant was issued based on information officers learned from questioning Petitioner *during* the traffic stop. (Dkt. 9 at 2.) However, they fail to address whether the traffic stop *itself* was legal. This is the issue raised in Grounds 1 and 2 of the FAP.

The only information in the record about why ICE officers conducted the traffic stop is in the Form I-213. It is questionable whether that form is reliable evidence for the facts stated therein, since it is unauthenticated and it is unclear whether the officer who completed it was present at the time of Petitioner's arrest.

---

Amendment standards remains good law.

Nevertheless, even accepting the facts stated in the Form I-213 as true, they do not provide specific articulable reasons for the traffic stop. The form states only that Petitioner was near the residence of the person the officers were looking for, and that Petitioner "fit the description of" that person in unspecified ways. For example, there is no comparison of Petitioner's height, weight, age, facial hair, etc. to that of the target. Petitioner's apparent race or ethnicity and his presence in a certain area are insufficient to meet the constitutional or regulatory standard. See Vasquez Perdomo, 148 F.4th at 682-83. As Petitioner points out, the Form I-213 also "identifies no traffic violation, attempted evasion, or" anything else suspicious "before officers activated their emergency lights." (FAP at 13, ¶ 160.)

Accordingly, Petitioner is entitled to relief on Grounds 1 and 2 of the FAP.

**B. Petitioner is Entitled to Relief on Ground 3, Because Respondents Have Not Proven That a Valid Arrest Warrant Was Issued.**

**1. Legal Standard.**

Because generally "it is not a crime for a removable alien to remain present in the United States," then "[i]f the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent." Arizona v. United States, 567 U.S. 387, 407 (2012). "The federal statutory structure instructs when it is appropriate to arrest an alien during the removal process." Id.

"When an alien is suspected of being removable, a federal official issues an" NTA. Arizona, 567 U.S. at 407 (citing 8 U.S.C. § 1229(a) and 8 CFR § 239.1(a)). The NTA "gives the alien information about the proceedings, including the time and date of the removal hearing." Arizona, 567 U.S. at 407 (citing 8 U.S.C. § 1229(a)(1)). If the alien "fails to appear, an in absentia order may direct removal." Arizona, 567 U.S. at 407 (citing 8 U.S.C. § 1229a(b)(5)(A)).

The NTA "does not authorize an arrest." Arizona, 567 U.S. at 407. The Immigration and Nationality Act ("INA") provides, "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on

whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Immigration regulations provide in relevant part:

> (b) Warrant of arrest—
>
> (1) In general. *At the time of issuance of the notice to appear*, or at any time *thereafter* and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest. A warrant of arrest may be issued only by those immigration officers listed in § 287.5(e)(2) of 8 CFR chapter I and may be served only by those immigration officers listed in § 287.5(e)(3) of 8 CFR chapter I.
>
> (2) If, after the issuance of a warrant of arrest, a determination is made not to serve it, any officer authorized to issue such warrant may authorize its cancellation.

8 C.F.R. § 1236.1(b) (emphasis added).

"If no federal warrant has been issued, [federal immigration] officers have more limited authority" to arrest noncitizens under 8 U.S.C. § 1357(a). Arizona v. United States, 567 U.S. 387, 407 (2012). An immigration officer may arrest a noncitizen if the officer "has reason to believe that the alien … is in the United States in violation of … law or regulation and is likely to escape before warrant can be obtained for his arrest…." 8 U.S.C. § 1357(a)(2); see also 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained.").

Thus, "a warrantless arrest requires an individualized assessment of the person's flight risk." United Farm Workers v. Noem, 785 F. Supp. 3d 672, 735 (E.D. Cal. 2025).

> In making this determination, courts consider a number of factors that were known by ICE officers at the time of the arrest, including

> whether the foreign national: (1) was arrested near his home; (2) lacked a known criminal history at the time of his arrest; (3) answered questions posed to him by ICE without incident or evasion; (4) was working in the area; (5) had a stable residence with a spouse, fiancé, and children; (6) had children or other family with proper immigration status; (7) was linked to altered identity documents; (8) had past attempts to flee; and (9) lacked ties to the community, such as family, home, or a job.

Castanon Nava v. Dep't of Homeland Sec., 806 F. Supp. 3d 823, 854 (N.D. Ill. 2025) (collecting district court cases).

**2. Analysis.**

Respondents argue that Petitioner's arrest was legal because an administrative arrest warrant was issued based on information officers learned from questioning Petitioner during the traffic stop. (Dkt. 9 at 2.) However, they have not produced a copy of the warrant itself or the NTA. The only evidence is in the Form I-213 which, as discussed above, is unauthenticated and may not be based on the personal knowledge of the officer who completed it. The Court previously warned the parties, "For the Court to rely on exhibits attached to the parties' filings as evidence, the exhibits must be properly authenticated, e.g., by a declaration from someone with personal knowledge." (Dkt. 6 at 3 (standing order issued on Sept. 22, 2026)); see generally Habeas Rule 7(a) ("If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition. The judge may require that these materials be authenticated."); Fed. R. Evid. 901 (listing ways of authenticating evidence).

The record also does not support a finding that Petitioner was likely to abscond before a warrant could be obtained. The undisputed evidence in the record is that Petitioner has no criminal history, has been in the U.S. for years,

maintains employment, and made no attempt to flee from the ICE officers who arrested him. "Mere presence of a noncitizen within the United States in violation of federal immigration law is not sufficient to conclude that a person is likely to escape before a warrant for arrest can be obtained." Juarez Perez v. Warden, Adelanto Ice Processing Ctr., No. 26-cv-05074-WLH-DTB, 2026 WL 2878728, at *4, 2026 U.S. Dist. LEXIS 219089, at *13-14 (C.D. Cal. Sept. 24, 2026).

Because Respondents have not provided any competent evidence that an administrative arrest warrant and NTA were properly issued and served, or any evidence supporting a warrantless arrest, Petitioner is entitled to relief on Ground 3 of the FAP.

**C. Petitioner is Not Entitled to Relief on Ground 4, Because He Has Not Shown that He Was Entitled to a Pre-Deprivation Hearing As a Matter of Due Process.**

In Ground 4, Petitioner argues that Respondents violated Petitioner's Fifth Amendment procedural due process rights by arresting him without "reasonable individualized safeguards." (FAP at 36-38, ¶¶ 192-205.) He argues he "lived in the United States for more than a decade before his September 16 detention, maintaining a fixed residence, employment, community relationships, and personal commitments," which "form[ed] part of the private interest considered" under a due process analysis. (Id. at 36, ¶¶ 194-96.) He argues, "[T]he particular circumstances of this encounter—including the mistaken identification, the initial vehicle seizure, the reported on-scene issuance of the warrant, and the limited evidence concerning the initial custody determination—require examination of whether the procedures provided were adequate." (Id. at 37, ¶ 201; see also Reply at 26 ("Petitioner does not contend that every interior immigration arrest must be preceded by a neutral evidentiary hearing, or that his years of residence automatically create an irrevocable right against immigration detention.. … His constitutional claim instead concerns the interaction between the Government's

actual acquisition of custody, the potential factual errors caused by the mistaken-target operation, the availability of appropriate custody procedures, and the justification for maintaining physical confinement."). Respondents argue, "Petitioner is properly detained … because this is Petitioner's first detention; he was not previously released from immigration detention or paroled." (Dkt. 9 at 3.)

To the extent Petitioner is arguing that he should have had a pre-deprivation bond hearing before an IJ before his arrest, he has not demonstrated that this procedure is necessary as a matter of due process. Many district courts have found that "the government's *knowing* decision not to detain an individual creates a liberty interest in their continued release," which is protected by the Fifth Amendment Due Process Clause. Anderson v. Chernut, No. 26-cv-01960-DAD-CKD, 2026 WL 809990, at *2, 2026 U.S. Dist. LEXIS 62410, at *4 (E.D. Cal. Mar. 24, 2026) (emphasis added). Here, however, there is no evidence that the government was previously aware of Petitioner's presence in the U.S. He admits that he entered without inspection and there is no evidence that he submitted an asylum application, was granted work authorization, etc. There is no evidence that DHS previously determined, either explicitly or implicitly, that he was not a danger or a flight risk. On this record, the Court cannot say that a pre-deprivation hearing was necessary to protect Petitioner's liberty interest. To the extent Petitioner is arguing that other procedures were necessary, he has not sufficiently explained what those procedures should have been. Accordingly, he is not entitled to relief on Ground 4 of the FAP.

**D. Petitioner is Not Entitled to Relief on Ground 5.**

In Ground 5, Petitioner repeats arguments made in the prior grounds and then argues that relief is the appropriate remedy for those violations. (FAP at 38-40, ¶¶ 206-15.) Because this is not an independent ground for relief, the Court will deny this claim.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that:

1. Grounds 1-3 of the First Amended Petition are granted, and Grounds 4 and 5 are denied.
2. Respondents shall **immediately release** Robely Roblero-Vazquez (A# 246-062-508) from custody.
3. If Respondents have not released Petitioner **within three (3) days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.[2]

DATED: November 20, 2026

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

---

[2] To the extent the Petition seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).